**IN THE UNITED STATES DISTRICT COURT,**
**CENTRAL DISTRICT OF ILLINOIS,**

| | |
|---|---|
| ARTHUR UNGER,<br>  Plaintiff,<br><br>Vs.<br><br>DR. BAUTISTA, DR. EK, DR. GARCIA,<br> and WEXFORD<br>HEALTH SERVICES, INC.,<br>  Defendants. | No.<br><br>Jury Trial Demanded |

## COMPLAINT AT LAW

Plaintiff Arthur Unger, by and through his attorneys Melinda Power and Philip DeVon of West Town Law Office has filed his complaint against Defendants Dr. Bautista, Dr. Ek, Dr. Garcia and Wexford Health Services, Inc. and in support of his Complaint states the following.

## INTRODUCTION

Plaintiff has been an inmate in the Illinois Department of Corrections (IDOC) since September 2018. During that entire time, he has been in extreme and increasing pain and has had increasing difficulty walking, standing, urinating, sleeping, exercising and carrying out many daily activities due to the Defendants' failure to treat his treatable illnesses. He has Peyronie's Disease, epididymal orchitis and acute prostatitis. Defendants have failed and refuse to provide him the medical care he needs to relieve his extreme pain and suffering. Their actions demonstrate deliberate indifference to Plaintiff's medical needs. This lawsuit is filed to ensure

that Plaintiff gets proper medical treatment and is compensated for the suffering Plaintiff has endured due to Defendants' deliberate indifference to his serious medical needs.

## JURISDICTION AND VENUE

1. This is an action brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the Eighth Amendment to the United States Constitution.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a) and 1367. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this complaint occurred in this judicial district.

## PARTIES

3. Plaintiff Arthur Unger is a citizen of the State of Illinois.

4. Defendants Doctors Bautista, Ek and Garcia were at all relevant times employed at Hill Correctional Center (Hill) and/or are employees of Defendant Wexford Health Services, Inc. and at all relevant times were employed at Hill. They were responsible for Plaintiff's medical care while employed at Hill and by Wexford. They are sued in their individual capacity.

5. Defendant Wexford Health Services, Inc. (Wexford) was at all relevant times a Corporation licensed to do business in Illinois and contracted with the IDOC to provide doctors, medical employees and medical services to inmates within the IDOC including Hill.

## FACTUAL ALLEGATIONS

6. On September 28, 2018, Plaintiff Unger was transferred from Will County Adult Facility (WCAF) and admitted into the IDOC, originally at Stateville Correctional Center..

7. When he was admitted into the IDOC, his medical report from WCAF indicated that he had been diagnosed with possible Peyronie's Disease. [1]

8. Plaintiff was transferred to Hill, where he is presently still incarcerated.

9. When Plaintiff arrived at Hill in October 2018, Defendant Bautista was the Hill Medical Director employed by Wexford.

10. On October 18, 2018, Defendant Bautista examined Plaintiff for the first time. Plaintiff informed Defendant Bautista of the presence of an abnormal growth on the base of his penis and a swollen and very sore left testicle, which caused excruciating pain when Plaintiff was walking or moving in anyway.

11. Plaintiff asked Dr. Bautista to ensure that he got adequate medical treatment for his serious medical condition, which Dr. Bautista diagnosed as possible Peyronie's disease.

12. It appears that Dr. Bautista's diagnosis was based, at least in part, on medical records that he reviewed both from Stateville and Plaintiff's previous detention at WCAF.

13. On October 22, 2018, upon information and belief, Defendant Bautista wrote in Plaintiff's medical records that he had "perineal phleboliths or Peyronie's Disease.[2]

---

[1] Peyronie's Disease is a condition resulting from the development of fibrous scar tissue, called plaque, inside the penis, which can be very painful. mayoclinic.org.

[2] Phleboliths are a small local calcification within the walls of a vein and are usually rounded. They are often harmless but sometimes are a sign of another disease. Phleboliths can form clots in deeper or surface veins. The deeper the clot the riskier the condition will be. healthh.com/phleboliths

14.     Additionally, Plaintiff told medical personnel that his penis was beginning to curve due to the growth; that it interfered with urination; that he was dribbling and that it was painful to have an erection or to be physically active.

15.     During this examination. Plaintiff was jerking, grimacing and crying in pain.

16.     On October 22, 2018 medical personnel at Hill referred Plaintiff's medical situation for Collegial Review, which included Defendant Bautista.

17.     On October 31, 2018, upon information and belief, Defendant Bautista requested an onsite ultrasound of Plaintiff's penis and testicles.

18.     On November 1, 2018, Dr. Garcia denied the request for an ultrasound. Collegial Review decided that the only action that would be taken was to have a follow up in one month, on November 26, 2018. The follow up did not happen on November 26, 2018.

19.     On October 31, 2018, November 7, 2018, November 14, 2018 and again on November 15, 2018, Defendants Bautista and Garcia conducted a "Collegial Review" with Wexford medical employees as required by Wexford to determine how to proceed with an "Alternative Treatment Plan" for Plaintiff.

20.     As a result of the recommendations of the Collegial Review, Defendants Bautista and Garcia determined they would treat Plaintiff on site.

21.     Meanwhile, Plaintiff was suffering from increasing pain and discomfort. Plaintiff's abnormal growth on his penis was growing larger, and it was very painful for him to urinate, defecate, and walk.

22.     Dr. Bautista ordered that Plaintiff be given a jock strap, Verapamil and Vitamin E.

23. Plaintiff requested that he be given medical treatment off site due to the extreme pain he was suffering and the failure of the medical treatment at Hill to substantially alleviate his pain and resolve his problem.

24. On December 5, 2018, a nurse at Hill referred Plaintiff to a doctor at Hill because of his ongoing medical problems, which had not been treated.

25. On December 12, 2018, medical personnel diagnosed Plaintiff with epididymis orchitis and acute prostatitis.[3]

26. Plaintiff's medical notes incorrectly noted that December 12, 2018 was a one month follow up exam for his penile pain and abnormal growth.

27. Plaintiff reported that the pain had now moved into his right testicle and had become severe. Further, he reported that his right testicle has "pulled up" and he is unable to walk, climb, eat or sleep. Plaintiff was crying uncontrollably. Plaintiff screamed out in pain during the examination. Plaintiff was in acute testicular pain.

28. On December 18, 2018, due to this medical emergency, Plaintiff was sent to Galesburg Cottage Hospital in Galesburg, Illinois.

29. Dr. Thomas Singel at Galesburg Cottage Hospital diagnosed Plaintiff with the following: epididymitis, orchitis, testicular torsion, urethritis, UTI and prostatitis and instructed that Plaintiff be seen by a private physician within five – six days. Further, Dr. Singel wrote that

---

[3] Orchitis is an inflammation of one or both testicles. It can be caused by a bacterial or viral infection or for unknown reasons. It is painful, but, with proper medicine, the problem can be treated and resolved. www.mayoclinic.org/diseases-conditions/orchitis/. Epididymis is a coiled tube inside the scrotum of a male. www.drugs.com/cg/epididymo-orchitis.html. Prostatitis is swelling and inflammation of the scrotum gland. It, too, is painful, but with proper treatment can be resolved. www.mayoclinic.org/diseases-conditions/

Plaintiff should follow up with a urologist, that he should return to the hospital if he has new or worsening symptoms and that he should be given ice and elevate his scrotum.

30. Defendants did not order a follow up visit with Galesburg Cottage Hospital.

31. The medical staff at Hill ordered that he be monitored but did not order that he be sent to a specialist or given emergency treatment, as Dr. Singel had instructed.

32. On December 19, 2018, a Collegial Review was held regarding Plaintiff's severe medical problems and the orchitis and prostatitis follow up with Dr. Benjamin was discussed. Defendants did not take any action to help Plaintiff or set up a follow up.

33. Plaintiff continued to suffer extreme pain in his penis area, swollen testicles, pain when walking and in carrying out daily activities.

34. On January 6, 2019, Plaintiff reported that his testicles were still swollen and he was in extreme pain. Plaintiff asked about follow up with an outside Doctor and medical personnel assured him he would be given medical furlough.

35. Around January 4, 2019, January 7, 2019 and January 21, 2019, Plaintiff filed grievances regarding his follow up visit with an outside Doctor.

36. Plaintiff had been requesting a lower bunk permit for quite some time since it was very, very painful for him to climb to his top bunk due to his penis pain. The permit was finally issued on February 3, 2019.

37. On February 3, 2019, Plaintiff requested ice to help ease the pain in his penis and testicles. The doctor at Hill referred Plaintiff to a Dr. whose name appears to be Benjamin.

38. On February 20, 2019, Plaintiff saw a urologist.

39. On February 21, 2019, Dr. Debord at Cottage Hospital in Galesburg agreed that Plaintiff should be given doxycycline for ten days for the epididymitis.

40. On March 18, 2019, the medical staff at Hill recommended that Plaintiff have a follow up in six weeks with urology. That request was denied by Dr. Garcia.

41. Plaintiff's condition did not improve and he again asked for outside medical treatment or a specialist who could determine what the medical problem was and prescribe him adequate and appropriate treatment.

42. On March 20, 2019, the medical staff evaluated Plaintiff, who had not improved, but, in fact, was worse, and the medical staff again recommended that Plaintiff be seen by a urologist.

43. The medical staff noted on March 20, 2019 that the growth on Plaintiff's penis was growing in size and caused intense pain and that Plaintiff's left testicle was raised and tender.

44. After another Collegial Review was held on or around March 22, 2019, Dr. Ek, who had replaced Dr. Bautista as the Health Care Administrator at Hill, and Dr. Garcia determined that Plaintiff should be treated for Epididymitis by giving Plaintiff a six week Urology request.[4] They determined that Plaintiff should be treated at Hill and not be sent out to be seen by a specialist.

45. Despite the fact that the treatment ordered by Drs. Bautista, Ek and Garcia's did not relieve Plaintiff's symptoms or remove the pain Plaintiff suffered, defendant doctors refused to change their treatment.

46. Nurse Practitioner Steele appealed the denial of the referral made my medical staff on March 18, 2019. Again, Defendant doctors denied the appeal.

---

[4] Epididymitis is an inflammation of the coiled tube at the rear of the testicle. mayoclinic.org.

47. Defendant doctors refused to send Plaintiff to a specialist who could properly diagnose Plaintiff and recommend appropriate treatment to cure Plaintiff.

48. On June 15, 2019, Plaintiff continued with the same symptoms and the same overwhelming and debilitating pain. Defendant doctors decided that they would conduct a follow up regarding Plaintiff in two to three weeks and discuss options at that time.

49. On July 9, 2019, Dr. Ek, in refusing to have Plaintiff receive outside medical help, told Plaintiff that he just had to stop crying and a little pain wouldn't kill him. Plaintiff was very upset and told the doctor that since he had seen the urologist on February 20, 2019, nothing had been done to cure him or to satisfactorily treat his symptoms.

50. Dr. Ek took no steps to get Plaintiff proper medical care despite Plaintiff's failure to improve and Plaintiff's obviously serious symptoms.

51. Dr. Ek also told Plaintiff that his refusal to get proper treatment for Plaintiff was due to a cost cutting policy of his employer. Wexford.

52. On July 31, 2019, Plaintiff again informed medical staff that he had pain in his testicles, anus and groin and stomach area when urinating and defecating. Defendant doctors did nothing.

53. On September 23, 2019, medical staff told Dr. Ek that Plaintiff had blood in his urine, warm, shooting pain and this testicle was tender. Dr. Ek told medical staff that Plaintiff should wait another week to see if he improved.

54. On September 25, 2019, Plaintiff reported that his pain was ten out of ten since the medicine he has been prescribed was no longer given to him.

55. Medical staff ordered follow up in one month.

56. On September 26, 2019, Plaintiff reported to Nurse Sick Call and complained of the same issues he had reported on September 23 and September 25, 2019.

57. On October 23, 2019, the medical situation of Plaintiff was referred to Collegial Review for follow up with a urologist.

58. On October 28, 2019, the Collegial Review, including Dr. Garcia, recommended that Plaintiff be seen by a urologist.

59. On November 6, 2019, Dr. Debord at College Hospital informed the medical staff that Plaintiff needed an ultrasound of Plaintiff's testicles before an appointment could be made, since Plaintiff's last ultrasound was five months ago.

60. On November 6, 2019, a Collegial Review was held to discuss the ultrasound.

61. On November 11, 2019, Defendant Garcia reported that the ultrasound test was approved.

62. From November 27, 2019 until December 12 or 13, 2019, Dr. Ek apparently ordered that Plaintiff not be given his medications which had helped to reduce his pain

63. The ultrasound was done on December 3, 2019.

64. On December 13, 2019, Dr. Debord called and informed medical staff that Plaintiff should be given Cipro 500 mg for his right testicular epididymitis.

65. On January 23, 2020, Plaintiff was seen by a doctor outside Hill.

66. On February 14, 2020, medical records at Hill indicated that Plaintiff should see Dr. Debord for a follow up on April 2, 2020.

67. Plaintiff's pain continues in its intensity, causing him to walk in a deformed manner.

68. Plaintiff is unable to sit for long periods of time without excruciating pain.

69.     If Plaintiff inadvertently touches or brushes up against an object with his groin, Plaintiff suffers additional pain.

70.     Plaintiff again requested to see a specialist on January 9, 2020 as noted in the grievance he filed on that date.

71.     Once again, Defendant Ek denied him adequate medical treatment.

72.     Plaintiff continues to suffer extreme pain.

73.     Defendants Bautista, Ek and Garcia have failed to adequately and properly treat Plaintiff; diagnose Plaintiff's medical conditions and ensure that he gets proper medical treatment for his serious medical conditions.

74.     Defendant Wexford has instituted a *de facto* policy of refusing to approve medical care for Plaintiff and other inmates since it will cost Wexford money to provide the medical treatment needed for the good health and proper medical treatment of Plaintiff and other IDOC inmates.

75.     Plaintiff has exhausted his remedies as required under the Prison Reform Litigation Act.

## PLAINTIFF'S DAMAGES

76.     Plaintiff suffered and continues to suffer physical and emotional injury as a direct and proximate result of the deliberate indifference to Plaintiff's serious medical needs by Defendants as alleged in the preceding paragraphs.

77.     Defendants' actions and refusal to act cause Plaintiff to suffer emotional and physical pain and injury.

78. Plaintiff has exhausted any and all administrative remedies by IDOC.

## COUNT I

### Defendant Doctors' Failure to Provide Adequate Medical Care to Plaintiff in Violation of the 8th Amendment under 42 U.S.C. 1983

79. Plaintiff repeats and realleges the preceding paragraphs 1 through 78 as if fully set forth in this Count.

80. Defendants are aware and have been for quite some time that Plaintiff suffers from serious and very painful medical conditions that, since not properly treated, pose a serious medical and physical risk to Plaintiff.

81. Defendants' failure to properly treat or to get proper treatment for Plaintiff's longstanding serious medical condition is due to their deliberate indifference to Plaintiff's medical needs.

82. Defendant doctors have been aware for quite some time that Plaintiff needed to be examined and treated by a specialist, yet they refuse to ensure that he is examined and treated by a specialist and gets the required medical treatment for his medical conditions.

83. As a direct and proximate result of the Defendants' failure to provide adequate medical care to Plaintiff, he was and continues to be unlawfully subjected to an unreasonable risk of serious harm, needless pain and emotional damages.

WHEREFORE, Plaintiff Arthur Unger respectfully requests that this Court:

A. Declare that the conduct of Defendant Doctors has violated the rights guaranteed to Plaintiff under the Eighth Amendment to the U.S. Constitution.

B. Award Plaintiff appropriate compensatory and punitive damages, as well as costs and attorney's fees incurred in connection to this lawsuit pursuant to 42 U.S.C. § 1988.

## COUNT II

### 42 U.S.C. § 1983 *Monell* Claim
### (Against Wexford)

84. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

85. Upon information or belief, Defendant Wexford has implemented a cost cutting policy that resulted in its failure to send Plaintiff to see and be treated by a specialist who could adequately diagnose Plaintiff's medical condition and treat the condition appropriately.

86. Upon information or belief, Wexford has other policies and/or procedures in place that resulted in its failure to ensure that Plaintiff received the proper medical treatment he needed for his condition.

87. Defendant Wexford is aware of the medical needs of patients with Peyronie's disease, and Plaintiff's other medical issues related to his penis and testicles, and is aware that its policies or procedures resulted in the denial of treatment for Plaintiff and for other inmates with the same or similar medical problems.

88. That pursuant to its policies and procedures, Defendant Wexford continues to refuse medically required treatment for Plaintiff, which resulted in deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment of the U.S. Constitution.

89. Wexford is aware of the medical risks that Plaintiff has incurred and will continue to incur due to its failure to ensure that Plaintiff gets proper medical treatment, yet Wexford failed and continues to fail to ensure that he gets the medical treatment he needs.

90. As a direct and proximate result of Defendant Wexford's policies and procedures that prevent Plaintiff from receiving the proper medical care he needs, Plaintiff was and continues to be unlawfully subjected to an unreasonable risk of serious harm and extreme pain.

91. As a direct and proximate result of Defendant Wexford's actions, Plaintiff has suffered and continues to suffer physical and emotional damages.

WHEREFORE, Plaintiff Arthur Unger respectfully requests that this Court:

A. Declare the conduct of Wexford to have violated the rights guaranteed to Plaintiff under the Eighth Amendment to the U.S. Constitution.

B. Award Plaintiff appropriate compensatory damages as well as costs and attorney's fees incurred in connection to this lawsuit pursuant to 42 U.S.C. § 1988.

### COUNT III

### *Respondeat Superior*
### (Against Wexford)

92. Each paragraph of this Complaint is incorporated as if fully restated here.

93. While committing the misconduct alleged in this Complaint, Defendants Bautista, Ek and Garcia were employees and/or agents of Wexford and were acting within the scope of their employment and/or agency. Wexford is liable as principal for all torts committed by its employed and/or agents on its behalf, and the resulting damages.

WHEREFORE, Plaintiff Arthur Unger respectfully requests that he be granted the following relief:

A. Declare that the Defendants' conduct as alleged above violates Plaintiff's rights under the Eighth Amendment prohibition against cruel and unusual punishment.

B. Award compensatory damages for Plaintiff's injuries suffered as a result of Defendant's conduct.

C. Award punitive damages for Plaintiff and against Defendants.

D. Award costs, attorney's fees and any other relief that the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury.

Respectfully submitted,

/s/ Melinda Power and Philip DeVon

Melinda Power and Philip DeVon
West Town Law Office
2502 W. Division
Chicago, IL 60622
Phone 773-278-6706
Fax 773-278-0635
melindapower1@gmail.com
philipdevonlaw@gmail.com

Dated: 3/26/2020